UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SADIK ABULL WAHHAD,

       Petitioner,

- against -

WARDEN FREDRICK MENIFEE,

       Respondent.

04 Civ. 7860 (KMK) (LMS)

REPORT AND
RECOMMENDATION

TO: THE HONORABLE KENNETH M. KARAS,
    UNITED STATES DISTRICT JUDGE

  Petitioner Sadik Abull Wahhad (herein, "Petitioner")[1] filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging two of the federal Bureau of Prisons' (herein, "BOP") decisions made in connection with his incarceration following his conviction for bank robbery in the Eastern District of New York. See Docket #1, Petition for Writ of Habeas Corpus (herein, "Petition") at p. 3; see also Docket #7, Return (herein, "Return") at ¶1. Petitioner additionally raises a third claim in his Petition challenging the "inhumane living conditions at F.C.I. Otisville" under the Eighth Amendment. See Petition at pp. 5-10.

  This Petition is one of several similarly-styled petitions filed across the country challenging (1) the BOP's calculation of prisoners' good conduct time (herein, "GCT")[2] under 18

---

[1] Although the caption identifies Petitioner as "Sadik Abull Wahhad," Bureau of Prisons' records indicate that Petitioner's name is "Sadik Wahhab." See Docket #5, Declaration of Stephanie Scannell, (herein, "Scannell Decl.") at p. 2 n.1. Petitioner's signature on the Petition reads "Sadig Wahhab," and he has printed his name beneath his signature as "Sadig Abdul Wahhabe."

[2] Some courts refer to this as "good time credit," and abbreviate this as "GTC."

1

U.S.C. §3624(b) and 28 C.F.R. §523.20, and (2) the BOP's December, 2002, Policy of placing inmates in community corrections centers (herein, "CCCs") under 18 U.S.C. §§3621(b) and 3624(c) for the last ten percent of their terms of imprisonment or six months, whichever is less. See, e.g., Levine v. Apker, 455 F.3d 71, 75 (2d Cir. 2006) ("A cavalcade of habeas petitions challenging the December 2002 Policy [regarding CCC placement] followed."); Sash v. Zenk, 428 F.3d 132, 136 (2d Cir. 2005) (summarizing decisions of "sister circuits" on challenges brought to the BOP's calculation of GCT). Petitioner alleges that the BOP's calculation of his GCT denies him the full amount of allowable GCT under 18 U.S.C. §3624(b); Petitioner claims that under this statute he is entitled to fifty four days of GCT for each year of his term of imprisonment and asserts that the BOP's award of GCT for each year of prison time actually served deviates from the plain statutory text of §3624(b). See Petition at p. 4; see also Tablada v. Thomas, 533 F.3d 800, 807 (9th Cir. 2008) (discussing the nature of the challenges brought against the BOP's calculation of GCT under §3624(b)); Thong v. Menifee, 04 Civ. 5768 (DLC)(KNF), 2005 U.S. Dist. LEXIS 22259, at *5-6 (S.D.N.Y. Sept. 26, 2005) (discussing the formula the BOP created to calculate federal inmates' GCT) (Westlaw cite unavailable), adopted by 2005 WL 3110325 (S.D.N.Y. Nov. 21, 2005). Petitioner separately argues that the BOP's change in policy in December, 2002, regarding the placement of inmates in CCCs for "the last 10% of an inmate's prison term to be served and not to exceed six months," see Petition at p. 5, violates the ex post facto clause of the United States Constitution, Art. I, sec. 9 cl. 3, see Petition at p. 13. Prior to December, 2002, the BOP had engaged in a policy of placing inmates in CCCs for up to the last six months of their period of incarceration even if that amount of time exceeded ten percent of their prison term. See Return at ¶7. Pursuant to the BOP's December, 2002,

policy change, inmates were only placed in CCCs for the last ten percent of their terms of imprisonment, not to exceed six months.  See id. at ¶13; see also Levine, 455 F.3d at 75. Petitioner argues that he "is entitled to a full 6 month placement in a CCC [and that] the new policy does not and Constitutionally cannot be applied to his consideration."  See Petition at p. 13.

Since the filing of Petitioner's Petition, the Second Circuit Court of Appeals has resolved the substantive legal challenges directed toward the BOP's calculation of GCT and placement of inmates in CCCs presented within the instant Petition.  See Levine, 455 F.3d at 75 n.1 (observing that although the Second Circuit did not have occasion to rule on the December, 2002, Policy, there was a " 'firestorm' of legal challenges triggered by the policy . . ." and holding the subsequently promulgated February, 2005, Policy invalid); Sash, 428 F.3d at 136-38 (upholding the BOP's calculation of GCT).  Because controlling law exists holding that the BOP's calculation of GCT is proper, see Sash, 428 F.3d at 136-38, I respectfully recommend that the Petitioner's first claim challenging the method used to calculate his GCT is without merit and should be dismissed.  Although the Second Circuit cast strong doubt on the propriety of the BOP's December, 2002, Policy in its decision in Levine v. Apker, see 455 F.3d at 75, for the reasons that follow, I respectfully recommend that Petitioner lacks standing to challenge the December, 2002, Policy because the policy change did not effect when Petitioner was eligible for placement in CCC confinement.  For this reason, I respectfully recommend that Petitioner's second claim challenging the BOP's December, 2002, policy change should be dismissed. Lastly, I respectfully recommend that Petitioner failed to exhaust his allegations regarding the conditions of his confinement at F.C.I. Otisville, and that even if the Court were to overlook this

failure, Petitioner's claims regarding the conditions at F.C.I. Otisville do not identify specific instances of constitutional injury unique to the Petitioner. I therefore respectfully recommend that Petitioner's third claim is without merit and should be dismissed.

## DISCUSSION

A.   Calculation of GCT under 18 U.S.C. §3624(b) and 28 C.F.R. §523.20

Federal inmates across the county commenced suit challenging the BOP's calculation of GCT under 18 U.S.C. §3624(b) and 28 C.F.R. §523.20. See, e.g., Sash, 428 F.3d at 136; De Luca v. Zenk, 04 CV 5233 (SLT), 2006 WL 1026489, at *2 (E.D.N.Y. Feb. 7, 2006) ("Petitioner's arguments against the BOP method of calculation have all been made in nearly identical petitions . . . brought in several circuits over the past year."). The Second Circuit conclusively resolved these challenges in this Circuit in Sash v. Zenk, holding (1) that the BOP's calculation of GCT based upon the amount of time an inmate serves, as opposed to the amount of time he or she is sentenced, must be analyzed under the Supreme Court's decision in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984), and (2) that the BOP's calculation of GCT under 28 C.F.R. §523.20 is reasonable. See Sash, 428 F.3d at 134-138. Following the Second Circuit's conclusive resolution of the legal challenges directed toward the BOP's calculation of GCT, District Courts in this Circuit have dismissed the similarly-styled petitions challenging the BOP's calculation of GCT on the basis that Sash is controlling law and is dispositive to these cases. See Gautier v. Bureau of Prisons, 396 F. Supp. 2d 465, 466 (S.D.N.Y. 2005); De Luca, 2006 WL 1026489, at *2; Kendall v. Deboo, 05-cv-45 (RNC), 2007 WL 708782, at *1 (D. Conn. Feb. 26, 2007).

Because Sash represents the controlling decision in our Circuit regarding the challenges

brought to the BOP's calculation of GCT under 18 U.S.C. §3624(b) and 28 C.F.R. §523.20, I respectfully recommend that Petitioner's first claim fails and should be dismissed.

B.        Petitioner's Placement in CCC and the BOP's December, 2002, Policy

Prior to December, 2002, the BOP engaged in a practice of transferring a federal inmate to a CCC for the last six months of his or her sentence, even if this six month period of time exceeded ten percent of his or her aggregate sentence. See Levine, 455 F.3d at 75; see also Lewis v. Menifee, 04 Civ. 5763 (HB)(AJP), 2004 WL 1857301, at *1 (S.D.N.Y. Aug. 19, 2004); Return at ¶9. In December, 2002, the Department of Justice's Office of Legal Counsel issued a memo directing that inmate placement in CCC custody "may not exceed the lesser of (i) the last ten percent of the sentence imposed on the offender . . . or (ii) six months." See Return at ¶11; see also Levine, 455 F.3d at 75; Lewis, 2004 WL 1857301, at *1. Following the Office of Legal Counsel's December, 2002, memorandum, wardens at federal facilities across the country issued memoranda to their respective inmate populations "stating that, effective December 20, 2002, BOP had change its procedure for designating inmates to CCCs." See Return at ¶13. Based upon this change in policy, inmates would only be placed in CCC confinement for the lesser of ten percent of their aggregate sentence or six months.

This change in policy only impacted a narrow class of federal inmates; the only inmates who were affected by this change in CCC placement were inmates who were serving sentences of less than sixty months and who might have been placed in CCC confinement for six months even though six months would have been more than ten percent of their aggregate sentence. "In other words, [in order for a Petitioner to have standing to challenge this change,] ten percent of the prisoner's sentence must be less than six months . . . ." Lewis, 2004 WL 1857301 at *1. The

5

instant Petitioner, however, was sentenced to an aggregate term of imprisonment of 170 months – 110 months on the underlying conviction for bank robbery and 60 months for Use of a Firearm During a Crime of Violence.  See Return at ¶1.  Petitioner's sentence, therefore, exceeds the maximum sentence a petitioner can be serving in order to have standing to challenge the December, 2002, Policy.  Under either the pre-December, 2002, custom and practice of the BOP, or under the December, 2002, Policy, Petitioner would have been placed in CCC confinement for six months.  Petitioner, therefore, is not one of the petitioners who might have been placed in CCC confinement for six months under the pre-December, 2002, practice of the BOP, but who would have been placed in CCC confinement for less than six months under the BOP's December, 2002, policy change.  Because Petitioner does not have standing to challenge the December, 2002, Policy, I respectfully recommend that Petitioner lacks standing to challenge this policy and that his second claim should be dismissed.[3]

---

[3] Two important caveats bear mentioning.

First, the Second Circuit subsequently invalidated the BOP's February, 2005, Policy, which was promulgated pursuant to a notice and comment period and imposed the same limitation on CCC placement that the December, 2002, Policy imposed.  See Levine, 455 F.3d at 75-76 (discussing history of December, 2002, Policy and the BOP's promulgation of a new rule governing CCC placement in February, 2005).  This invalidation of the similarly-worded February, 2005, BOP Policy, however, does not impact Petitioner's challenge to the December, 2002, Policy, in light of the fact that his placement in CCC confinement was not impacted by the December, 2002, Policy change.

Second, disposition of Petitioner's instant Petition had been deferred by the undersigned pending resolution of a violation of supervised release charge against the Petitioner which was pending before the Honorable David G. Trager, Senior United States District Judge, Eastern District of New York.  See U.S.A. v. Wahhab, et al., 92 Cr. 1249-DGT (E.D.N.Y.), Docket #92, Order Petitioning Court to Issue Warrant for Sadik Abdull Wahhab dated May 30, 2006.  Petitioner pled guilty to a violation of supervised release on September 16, 2008, and on October 17, 2008, Judge Trager ordered Petitioner to serve the remainder of his term of supervised release without additional penalty.  See U.S.A. v. Wahhab, 92 Cr. 1249-DGT (E.D.N.Y.), Docket #111, Minute Entry dated September 16, 2008; Docket #113, Minute Entry dated October 17, 2008.  Now that there is no possibility that Petitioner's supervised release will be revoked by the

C.      Petitioner's Challenge to His Conditions of Confinement at F.C.I. Otisville

Lastly, Petitioner alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment stemming from the conditions of confinement he experienced at F.C.I. Otisville.  See Petition at pp. 5-10.  Petitioner's claims are broadly worded and include claims based upon (1) stress and tension; (2) a lack of sanitation and hygiene; (3) limited telephone availability; (4) limited television availability; (5) food service quality defects; and (6) medical problems.  See Petition at pp. 5-9.  The undersigned respectfully recommends dismissal of this omnibus Eighth Amendment claim for two reasons.

As noted by the Respondent, Petitioner failed to present any of these claims to the BOP in the first instance by filing an administrative grievance as required by the law of this Circuit.  See, e.g., Sash v. Laird, 06 CV 6052 (LB), 2008 WL 2816019, at *2 (E.D.N.Y. July 21, 2008) ("federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas corpus relief pursuant to §2241.") (citation omitted).  Petitioner's claims, even though styled as claims in support of habeas relief, speak to purported civil rights violations, which Courts in this District have held are cognizable under the general grant of jurisdiction provided by the habeas statutes.  See Cato v. Menifee, 03 Civ. 5795 (DC), 2003 WL 22725524, at *3 n.1 (S.D.N.Y. Nov. 20, 2003) (noting that challenges to conditions of confinement at federal facilities may be heard under 28 U.S.C. §2241).  These challenges, however, must be processed properly through the administrative exhaustion process; failure to exhaust such claims bars the Court from hearing these complaints.  See Barney v. Bureau of Prisons, 02 CV 5284 (SJF)(LB), 2004 WL 2810108,

---

(continued from previous page . . .)
sentencing court, which would have mooted the issues raised herein, the undersigned has finalized the instant Report and Recommendation.

at *1-2 (E.D.N.Y. Dec. 8, 2004) (discussing the administrative exhaustion process used in federal prison facilities). Respondent bolsters its failure to exhaust argument by providing the declaration of a BOP employee who avers that the system used to track federal inmates' grievances contains no administrative grievances filed by the Petitioner regarding the conditions of confinement at F.C.I. Otisville. See Scannell Decl. at ¶5. Petitioner, moreover, acknowledges this failure in his Petition and requests that the Court overlook the administrative exhaustion mandate. See Petition at p. 14-15. I respectfully recommend that Petitioner's request that this Court overlook his failure to exhaust his challenge to the conditions of confinement at F.C.I. Otisville should be denied due to the fact that he fails to present an otherwise cognizable Eighth Amendment claim as explained below.

It is textbook constitutional law that all plaintiffs must adequately allege that they have been injured by a defendant's actions in order to have standing to sue in federal court. See, e.g., Hein v. Freedom from Religion Found., Inc., 127 S. Ct. 2553, 2562 (2007). General claims of wrongdoing, absent some concrete and particularized injury, do not confer standing on a plaintiff. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' ") (citations and footnote omitted). Petitioner's claims in support of his asserted Eighth Amendment violations, however, amount to generalized claims of inadequacies, none of which are alleged to have caused him injury. See, e.g., Petition at p. 9 (enumerating complaints about prisoners in

wheelchairs and prisoners not being able to access medical appointments).[4] Petitioner's claims consist of allegations that "over crowding has [] caused greater level[s] of stress and tension," that "[i]n some cases an inmate has to go to bed without taking a shower," and that "[i]nmates have to wait more than one hour to see a doctor."  See Petition at pp. 5, 7, 9.  These generalized claims, which do not appear to be unique to Petitioner and are not alleged to have caused Petitioner any personal injury, fail to state claims for relief and should be dismissed from this case.  I therefore respectfully recommend that Petitioner's third claim, styled as an Eighth Amendment claim, is both unexhausted and fails to state a colorable claim for relief, and it should be dismissed.[5]

## CONCLUSION

For the above stated reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petitioner's Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2241 should be dismissed in its entirety.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written

---

[4] There is no allegation in Petitioner's Petition that Petitioner is wheelchair bound or has personally experienced the denial of medical care.

[5] Even if Your Honor were to consider the sufficiency of Petitioner's pleadings in this regard, it does not appear to the undersigned that such allegations comport with the Supreme Court's Eighth Amendment jurisprudence.  See, e.g., Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.") (quoting Wilson v. Seiter, 501 U.S. 294, 305 (1991)).

objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: May __, 2009
White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Kenneth M. Karas, U.S.D.J.

Petitioner pro se and Counsel of Record for Respondent

10